### SOLOMON *vs.* HIGGINS.

Where a vessel was let by a charter party to perform several consecutive voy-
ages, in the course of which she performed an intermediate voyage, at the
request of the supercargo, the agent of the freighter, for which the owner
was paid by the supercargo whilst abroad, *it was held*, in an action of *cov-
enant* by the owner against the freighter, the voyages specified in the char-
ter party having been performed, that the fact of the additional voyage did
not shew the *substitution* of a new contract, and that therefore the owner
was entitled to recover on the covenant in the charter party, he not claim-
ing any thing for the additional voyage in the action brought by him.

ERROR from the superior court of the city of New-York.
Higgins sued Solomon in an action of *covenant* on a charter
party of affreightment, whereby Higgins let to freight to Sol-
omon a brig called the Emblem, upon a voyage from New-
York to Gibraltar, thence to Santa Cruz, in the island of
Teneriffe, thence to Havana, and then home to New-York ;
reserving the cabin for the captain and his officers, except
that a supercargo should have his passage free therein. Sol-
omon, on his part engaged to pay $3000, together with
$100 primage for the hire of the brig, $500 to be paid at Gib-
raltar, $500 at Santa Cruz, $200 at Havana, and the bal-
ance on the return of the vessel to New-York. It was furth-
er agreed that Solomon should have the *surplus* room in the
cabin from Gibraltar *via* Santa Cruz and Havana to New-
York, paying $200 for the same ; the vessel to lay 60 days
to receive and deliver her several cargoes ; and should a lon-
ger time be required by the freighter, his agent or factor,
the freighter agreed to pay $20 per day demurrage, payable
day by day, as the same might become due, and the vessel
to lay 30 days on demurrage, if required. The plaintiff, in
his declaration, set forth the charter party, and averred a
performance of the several voyages, and assigned for *breach-
es :* 1. That the defendant kept the brig *six days* on de-
murrage in the port of New-York ; and 2. That he refused
to pay $1600, the balance of the sum stipulated to be paid
for the hire of the vessel. The defendant pleaded, 1. *Non*

*est factum ;* 2. That he did not keep the brig six days on demurrage ; 3. That he paid the $1600 ; and 4. That the plaintiff did not proceed from Santa Cruz to Havana, but on the contrary thereof proceeded with the vessel from Santa Cruz to another port called Oratavo, and wilfully, and without reasonable cause, detained the vessel in the performance of such voyage, before proceeding to Havana, 30 days ; by reason of which deviation, and delay of the vessel, the defendant and his agents were prevented from loading at Havana a full homeward bound cargo. The plaintiff *replied,* taking issue on the two first pleas; denying payment as to the third ; and as to the fourth plea, (*protesting* that the brig did not proceed from Santa Cruz to Oratavo, and that the plaintiff did not wilfully, and without reasonable cause, detain the vessel in the performance of such voyage, before proceeding to Havana for the 30 days,) denying that the defendent and his agents were, by reason of the deviation and delay in the plea mentioned, prevented from loading at Havana a full homeward bound cargo.

On these pleadings the cause was tried, and the following facts appeared : The vessel was laden by the defendant in the port of New-York, proceeded to sea, performed the several voyages mentioned in the charter party, and returned in safety to New-York. · The defendant sent a supercargo in the vessel, who took the surplus room in the cabin from Gibraltar home. Whilst the vessel was at Santa Cruz, the *lay days* expired ; and not being able to obtain as much freight and as many passengers at Santa Cruz as he desired, the supercargo requested the plaintiff, who acted as master of the vessel, to proceed to Oratavo, a port on the other side of the island of Teneriffe, in the hope of there obtaining both freight and passengers. The plaintiff accordingly proceeded to Oratavo, where about thirty passengers were obtained, and a quantity of brandy in demijohns was taken on board. From Oratavo the vessel proceeded to Havana, from whence she sailed for New-York, with about one half or two thirds of a cargo ; her departure without a full cargo being the act of the defendant's agents, the vessel being in a condition to receive a full cargo, had it been offered. A witness for the

ALBANY,
Jan. 1831.

Solomon
v.
Higgins.

plaintiff, on his *cross-examination*, produced an account exhibited by the plaintiff, in which the defendant was debited with 78 days demurrage, over and above the 60 days provided for in the charter party, besides being charged with the specific sums agreed to be paid by the charter party ; and the defendant was credited with $620, received for demurrage at Havana, and $760 received on same account at Teneriffe, besides $2083,56 cash received, leaving a balance of $1396,44, as due to the plaintiff. One item of the *demurrage* was 62 days at Teneriffe, viz. from the 18th December, 1826, to the 19th February, 1827. It was proved that the vessel left Santa Cruz about the 10th of February, arrived at Oratavo on the 15th, and stood off and on at the port of Oratavo, taking in cargo until the 19th February, when she sailed for Havana. It was proved by the mate that the supercargo told him that he paid the captain $200 for going round to Oratavo. The plaintiff having rested, the defendant moved for a *nonsuit*, because, 1. The plaintiff, by his own shewing, had broken the contract, and could not recover under it ; 2. That the plaintiff could not set up a parol agreement varying the terms of the charter party ; 3. That as the plaintiff could not recover in this action for the deviation, he had not the right to appropriate the funds received by him to that object; and 4. That there was no proof of any breach corresponding with the issues presented by the pleadings. The motion was denied, and the cause went to the jury, who found for the plaintiff for $1463,71. The defendant moved for a new trial, which was denied, and judgment was given for the plaintiff. The defendant sued out his writ of error.

*D. Graham*, for plaintiff in error. The contract is that the vessel shall proceed with cargoes from New-York to Gibraltar, from Gibraltar to Santa Cruz, *from Santa Cruz to Havana*, &c. ; and it is averred in the declaration that such voyages were performed. The evidence is that the vessel sailed from *Santa Cruz to Oratavo*, and thence to Havana ; clearly shewing a breach of the contract, and a variance from the averment. Performance is a condition precedent to the right to recover. 1 *H. Black.* 270. 2 *id.* 389. 1 *Saund.*

320, 7 *Johns. R.* 250. 12 *id.* 165. Allowing the plaintiff to be entitled to recover for the extra voyage to *Oratavo,* he cannot give evidence of the agreement with the supercargo, in the action of *covenant* on the charter party. 1 *Phil. Ev.* 426, 433. 8 *Johns. R.* 491. *Leslie* v. *De La Torre,* cited in *White* v. *Parkin,* 12 *East,* 583. 8 *Johns. R.* 392. 15 *id.* 200. 9 *id.* 115. 4 *Cowen,* 564. If the plaintiff is not entitled to recover in this action, he is not at liberty to appropriate the funds to the satisfaction of any claim growing out of the deviation of the voyage. There is no proof of any breach corresponding with the issues presented by the pleadings. The breaches are the non-payment of demurrage for six days in the port of New-York, and the non-payment of $1600, the *balance* of the sum stipulated to be paid for the freight or hire of the vessel. By the account rendered, the demurrage in the port of New-York is paid, and the freight is liquidated by the appropriation of the monies received. Demurrage is a totally distinct charge, depending on a separate covenant, the breach of which ought to have been specially assigned.

*J. Anthon,* for defendant in error. Under the plea of *non est factum,* every averment in the declaration except the execution of the charter party, was admitted. It was not necessary for the plaintiff to prove performance ; and had there even been a defect of proof, the defendant could not avail himself of it, under the issue joined. *Kane* v. *Sanger,* 14 *Johns. R.* 93. The evidence of a parol agreement related to the contract between the supercargo and the plaintiff as to the touching at Oratavo, which is a distinct matter, having no reference to the charter party, and for which no compensation was sought in this action, the contracts being made, performed and paid for abroad. The plaintiff below did not claim to appropriate any part of the monies received by him, set forth in his account, in satisfaction of any demand growing out of the voyage to Oratavo. No claim was made for demurrage at that place, nor for freight beyond the contract. The defendant cannot complain that the plaintiff did more than he had stipulated to do. The issues were proved. The six days demurrage in New-York were shewn ; but if not, it

should have been urged to the jury, in diminution of the verdict ; and as to the balance due being for *demurrage* instead of *freight*, the defendant below misapprehends the facts. The account expressly shews the demurrage to have been paid, and consequently the balance must have been for the freight or hire of the vessel.

*By the Court,* SAVAGE, Ch. J. Under the first point, it is contended that the plaintiff failed to perform on his part, and therefore cannot recover. It is certainly true, that so far as performance by the plaintiff was a condition precedent, he was bound to shew performance, before he could claim to recover. Five hundred dollars were to be paid at Gibraltar. Had the vessel never arrived there, or had the cargo not been delivered, by reason of any fault on the part of the plaintiff, the money could not have been demanded. So also of the return to Santa Cruz, Havana and New-York, and the delivery of the several cargoes. The plaintiff avers that he went from Gibraltar to Santa Cruz, and there took in a cargo for Havana. This is true.; but he did not go direct for Havana ; he went to Oratavo, and at that place took in additional cargo and passengers for Havana. This was by special contract with the plaintiff's agent, and for which an extra price was paid. Does this absolve the defendant from his contract ? or does this fact proven, constitute a variance between the plaintiff's declaration and evidence *?* Clearly it ought not to discharge the defendant from his covenant, because the plaintiff, at the defendant's request, performed more than by the original agreement he was bound to perform. Nor does it seem to me to be the case of a variance ; the averment is proved. He did take in freight at Santa Cruz for Havana. He also took some at Oratavo for Havana ; but that is not inconsistent witn the previous fact, nor with the averment. The case of *Robertson* v. *Columbia Ins. Co.,* 8 *Johns. R.* 491, is referred to, to prove that a deviation from the voyage described in the policy discharges the underwriter ; but it is not every departure from the voyage described in the policy which discharges the insurer. The master may deviate to procure convoy, to avoid capture, to repair, to

procure seamen, and generally when there is reasonable ground for departure, though not an absolute necessity ; and in such cases the underwriter is not discharged. *3 Johns. R.* 352. But it might be asked whether, if the underwriter had been on board in the cases cited from 8 *Johns. R.* and the departure from Bonavista to Madeira had been at his request, would the court have held that he was discharged.

The counsel for the plaintiff in error has referred to the case of *Leslie* v. *De la Torre*, cited in *White* v. *Parkins*, 12 *East*, 583, which was an action upon a charter party, by which the plaintiff was to carry corn to Barcelona, and 65 days were allowed to wait for convoy at Portsmouth and Ferrol. The defendant persuaded the master to go to *Corunna*, and there wait for convoy ; he went and waited beyond the 65 days. An action was brought on the charter party for damages, and the defendant defended himself upon the letter of the charter party. The plaintiff urged the parol agreement ; Lord Kenyon decided that the charter party being under seal, the plaintiff could not set up a parol agreement inconsistent with it, and which was meant to alter it. This case is not applicable here. There the lay days were fixed by the charter party ; here sixty lay days were stipulated, which were not to be paid for. Then follows this clause : " And should a longer time be required by said freighter, his agents or factor, said freighter agrees to pay $20 per day demurrage, payable day by day, as the same may become due." The defendant, or his agent the supercargo, had a right, by the contract, to detain the vessel in any port, where, by the charter party, she entered to discharge and receive cargo. In the case of *Leslie* v. *De la Torre*, there was no stipulation of that kind. It is not denied, as I understand, that the charge for lay days at Santa Cruz was correct. They were paid for, and form no part of the plaintiff's claim. The plaintiff below does not rely upon any parol contract, varying the terms of the written contract. Had the vessel gone from Santa Cruz to Havana, without touching at Oratavo, there could have been no question about the lay days. If the plaintiff's agent was unfortunate or negligent in procuring cargo or passengers, that was not the fault of the plaintiff be-

low. He was detained by the defendant below, for his agent was expressly authorized to detain the vessel, and payment was made. There is, therefore no necessity for reliance upon a patrol contract; but if that were necessary, and an action was brought upon it, the case of *White* v. *Parkin*, 12 *East*, 578, in which the preceding case was cited in argument, goes very far, if not the whole length, of deciding that an action would lie upon it. There was a charter party between the parties in that case, by which the defendants were to pay a certain sum per month, for eight months, *to begin and be accounted from the day of her* (*the vessel*,) *sailing from Gravesend.* After the execution of the charter party, upon the request of the defendants, the freighters, it was agreed that the ship instead of taking in her cargo in the channel, should take it in the Thames, and that the pay of the ship should commence from her entry at the custom house: the charter party to stand in all other respects. The vessel was loaded in the Thames, and cleared at the custom house, the 30th November, 1808, and sailed from Gravesend the 27th January, 1809. She performed her voyage, and payment was made for the time of her sailing from Gravesend, according to the charter party, and the action was brought for the time of her detention in the Thames, after she cleared from the custom house. The court decided that the plaints were entitled to recover. Lord Ellenborough says: "Here there is no conflict between the charter party and the subsequent agreement. It is true, that when there is a contract under seal, the parties cannot dispense by parol with the performance of any of the covenants in it; but here the argreement to load the ship in the Thames, before she proceeded to Gravesend, was for a period before the charter party attached." He further adds, that the parol agreement did not dispense with the charter party, and that there was no repugnance between them, but the two may well subsist together. This decision rests upon the principle that there was no repugnance between the two contracts; the fact is apparently relied on, that one was executed before the other commenced; but it seems to me that the true principle is, that there was no repugnance, no contradiction between them; the parol contract did not

assume to alter or control the written contract. Neither do I understand that the written contract in the case before us was controlled or contradicted in any sense different from what was done in the case just cited. If the vessel in that case could be employed, and receive pay before she reached Gravesend, although by the charter party that was the place where the pay was to commence, why might not the Emblem, when laying in Santa Cruz, receive extra pay for going to Oratavo, where for aught that appears in the case, it might be as proper for her to go, as in the other case it was for the vessel to go to Gravesend. I cannot see any repugnance; but that is not the question here. That voyage, if it may be so called, was paid for; and the question before us is, whether that parol contract put an end to the plaintiff's remedy on the charter party. The law is that the parol contract, if inconsistent with the speciality, cannot control it, and therefore the parol contract is void; and so it was contended in *White* v. *Parkin*. That a written contract cannot be enlarged by parol, is well settled; as in the cases cited of *Philips* v. *Rose*, 8 *Johns. R.* 392, and *Jewell* v. *Schroeppel*, 4 *Cowen's R.* 564. The first of these cases shews that in an action upon a sealed instrument, where a mill was to be built by a certain day upon a certain spot, the party cannot recover, if it appears that the mill was built upon a different spot, and not done by the day specified. The next case shews that such a special parol agreement is valid, and may be enforced after the sealed contract had been performed or rescinded. In *Philips* v. *Rose*, the plaintiff built the mill for the defendant, but not within the time, nor at the place mentioned in the contract, and therefore he could not recover, though the defendant had verbally agreed to the variation from the written agreement. But suppose no time had been mentioned for completing the mill, but only that the work should be done in a particular way, and that work had been done, and other work had been done by special parol contract, and paid for; could such additional work be shewn as a variance to defeat the plaintiff's right to recover on the written contract? There would be no departure from the contract; the stipulated work would be all done. It would be otherwise if one

thing was substituted for another. So in this case, if at Gibraltar, it had been agreed to substitute Oratavo for Santa Cruz, and the vessel had sailed and passed by Santa Cruz, there would have been a material variance. As the case stands, I think there was none.

I am of opinion, 1. That the plaintiff did shew a performance on his part, whether he was bound to do so or not; 2. I consider the parol agreement as not affecting this case; 3. That the plaintiff was perfectly correct in appropriating the amount received for going to Oratavo, in payment of that service; 4. That the evidence supports the issues; and 5. That the agency of the supercargo being fully proved, evidence of his acts and declarations were properly received.

I am in favor of the affirmance of the judgment below.